IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED

8/11/2026
LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
DEPUTY CLERK

| | | |
|---|---|---|
| NATIONSTAR MORTGAGE LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:25-cv-00130 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CHARLES R. ANDREWS, JR., *et al.*, | ) | By:    Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendants. | ) | |

Plaintiff Nationstar Mortgage, LLC ("Nationstar") initiated this action, as the lender and secured party under a Deed of Trust secured by a piece of real property, to adjudicate the property interests, if any, of the children of the now-deceased prior owners. This matter is before the court on Nationstar's Motion for Default Judgment against Defendant Charles R. Andrews, Jr. ("Charles Jr." or "Andrews"), based on his failure to respond to the complaint and Nationstar's numerous attempts to reach him. (ECF No. 12.) For the reasons discussed below, the court will deny Nationstar's motion.

## I.    FACTUAL BACKGROUND

Charles R. Andrews, Sr. ("Charles Sr.") and June S. Andrews purchased 176 Pouts Hill Road, Strasburg, Virginia ("the Property"), as tenants by the entirety by a Deed dated September 7, 1973. (Compl. ¶ 8 [ECF No. 1].) On March 15, 1994, June died intestate and her interest in the Property passed to Charles Sr. by operation of law. (*Id.* ¶ 9.) Then, on March 12, 2007, Charles Sr. conveyed the Property to "Diane H. Marks, an unmarried woman and Charles R. Andrews Sr., an unmarried man, as joint tenants" by a Deed of Gift. (*Id.* ¶ 10.) Soon afterward, Diane and Charles Sr. married, and on April 11, 2007, approximately one

month after executing the Deed of Gift, "Diane H. Marks, an unmarried woman, and Charles R. Andrews Sr., an unmarried man," conveyed the Property to "Diane H. Andrews and Charles R. Andrews Sr., husband and wife," by a Deed of Gift (the "Married Deed"). (*Id.* ¶ 11–12; Ex. B.) The Married Deed conveyed the Property to "Diane H. Andrews and Charles R. Andrews, wife and husband as joint tenants." (*Id.* Ex. B.) Also on April 11, 2007, Charles Sr. and Diane obtained a loan in the principal amount of $192,000 (the "First Loan"), secured by the Property pursuant to a deed of trust (the "Married DOT"). (*Id.* ¶ 14, Ex. C.)

On November 19, 2010, Charles Sr. died intestate and was survived by his wife, Diane, and his children from a previous relationship, Charles Jr. and Wendy Andrews. (*Id.* ¶¶ 16–17.) After their father died, the Andrews children did not take any action consistent with ownership of the Property. (*Id.* ¶ 19.) For instance, on July 28, 2015, Charles Jr. filed a voluntary petition for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Western District of Virginia, where he indicated on his Schedule A form that he did not have any interest in real property. (*Id.* ¶¶ 20–23.)[1]

On August 2, 2016, Diane obtained a refinance loan in the principal amount of $196,600 (the "Refinance Loan"), which refinanced and paid off the First Loan secured by the Married DOT in the amount of $193,272.84. (*Id.* ¶¶ 26–27.) The lender, Nationstar, secured the loan through a deed of trust ("Refinance DOT") secured by the Property. (*Id.* ¶¶ 20, 29, Ex. A.) To obtain that loan, Diane executed a Borrower's Affidavit attesting that she was the sole owner of the Property, as well as an Owner's Affidavit attesting that Charles Sr. passed

---

[1] Nationstar also contends—without providing any further detail—that Wendy Andrews's conduct demonstrated that she did not claim any interest in the Property. (Compl. ¶ 25.)

- 2 -

survivorship rights to her. (*Id.* ¶¶ 30–34, Ex. D, Ex. E.) Diane died on January 4, 2024, and is survived by her daughter, Jennifer Mangum ("Mangum"). (*Id.* ¶¶ 35–36.)

Shortly after Diane's death—and over a year-and-a-half prior to commencing this action—the Property was sold by foreclosure and conveyed to the Federal Home Loan Mortgage Corporation ("Freddie Mac") at Nationstar's direction. (Consent Ord. ¶ 23.)[2] Thereafter, Wendy Andrews died on March 14, 2025, and is survived by her brother (Charles Jr.), who is the beneficiary of her intestate estate. (*Id.* ¶¶ 37–38.)

In commencing this lawsuit, Nationstar seeks to "adjudicate what, if any, interest Charles R. Andrews [Jr.] and Wendy Andrews . . . had in the Property following their father's passing, to the extent of any such interest[.]" (*Id.* ¶ 18.) Nationstar requests that the court enter a declaratory judgment decreeing, in essence, that Charles Jr. holds no interest in the Property, and to the extent that he does, he disclaimed it through his statements in his bankruptcy petition (Count I). (*Id.* ¶ 43.) Nationstar also requests that, if the court finds that Andrews currently holds an interest in the Property, it enter an order quieting title in the Property (Count II) and enforce the terms of the Refinance DOT against Mangum and Andrews or impose an equitable and/or implied lien, constructive trust, and/or resulting trust (Count III). (*Id.* ¶¶ 45, 69.)

---

[2] Nationstar did not mention the foreclosure sale in its complaint or in its motion for default judgment, but the foreclosure sale is discussed in the Consent Order between Nationstar and the defendants, which Nationstar attached and referred to numerous times in its motion. Therefore, the court will consider the information in the Consent Order. *See Rahll & Sons, Inc. v. Everfresh Farms, LLC*, No. 25-2531-BAH, 2026 WL 1441677, at *3 n.2 (D. Md. May 22, 2026) ("The Court may consider 'affidavits and other supporting documentation' in resolving a motion for default judgment." (quoting *Joe Hand Promotions, Inc. v. Hill*, No. PX-21-557, 2022 WL 5245728, at *2 n.1 (D. Md. Oct. 6, 2022))).

## II.    PROCEDURAL BACKGROUND

Nationstar filed its Complaint against Andrews and Mangum on November 21, 2025. (*See* ECF No. 1.) Andrews was served on January 19, 2026.[3] (ECF No. 7.) Accordingly, his responsive pleadings were due February 9, 2026. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). Andrews did not file a responsive pleading and has not responded to the Complaint in any manner. On March 9, 2026, Nationstar moved for an entry of default against Andrews[4] (ECF No. 9), which the clerk entered the next day (ECF No. 10).

Prior to seeking entry of default against Andrews, Nationstar circulated a proposed consent order to Andrews and Mangum on February 18, 2026, which, according to Nationstar, would have "resolve[d] the matter." (Mot. for Default J. ¶ 7 [ECF No. 12].) Mangum advised Nationstar that she was in communication with Andrews and would forward the proposed consent order. (Mot. for Default J. ¶ 7.) Soon after, Mangum executed the proposed consent order and advised Nationstar that Andrews indicated to her that he would also sign the order. (*Id.* ¶ 8.) But Andrews never signed the order. (*Id.*) Then, on April 20, 2026, Nationstar sent Mangum a revised consent order ("Consent Order"), which is attached to Nationstar's motion as Exhibit 1. (*Id.* ¶ 9.) The essential terms of the Consent Order are as follows:

> 23. On April 8, 2024, pursuant to the instruction of Plaintiff, the Property was sold by foreclosure to Federal Home Loan Mortgage Corporation, and conveyed thereto pursuant to that certain Trustee's Deed recorded at Deed Book 202401971 in the land records of Shenandoah County, Virginia (the "Trustee's Deed"), and the finality of such sale is subject to the adjudication made herein (the "Foreclosure Sale"). In execution of this Consent Order, Stipulation, and Judgment, each of the

---

[3] Mangum was served on January 2, 2026. (ECF No. 8.)

[4] Nationstar has not sought default or default judgment against Mangum.

> Defendants stipulates and consents to said Foreclosure Sale, and validity thereof.
>
> 24. By execution of this Consent Order, Stipulation, and Judgment, and in resolution of this Lawsuit, the Parties stipulate, consent, ratify, and agree that record title to the Property shall be quieted and declared to be vested in JENNIFER MANGUM, subject to the lien, encumbrances, and encumbrance of Plaintiff under the Deed of Trust, and that Defendant Mangum stipulates to and ratifies the foreclosure of said instrument, including the April 8, 2024 sale and resulting Trustee's Deed.
>
> 25. By execution of this Consent Order, Stipulation, and Judgment, Defendant Charles R Andrews, Jr., individually, and as beneficiary and sole surviving heir of Charles R. Andrews, Jr. and of Wendy Andrews, ratifies and confirms that he has no interest in the Property, and renounces any interest in said Property in favor of Borrower Diane H. Andrews, that is not vested in her sole heir, Defendant Jennifer Mangum.

(*Id.* Ex. 1 ¶¶ 23–25.)

Mangum told Nationstar on April 29 that she reached out to Andrews but did not receive a response. (*Id.* ¶ 10.) That same day, Nationstar's counsel spoke with Andrews via phone about the Consent Order. (*Id.*) According to Nationstar, Andrews agreed to the proposed resolution during the call and advised that he would execute the Consent Order upon returning from vacation. (*Id.* ¶ 11.) After the phone call, Nationstar's counsel emailed Andrews with a summary of the call and an additional copy of the Consent Order. (*Id.*; Ex. 2.)[5] On May 5, after receiving no response, Nationstar's counsel sent a follow-up email to Andrews regarding the status of the Consent Order. (*Id.* ¶ 13; Ex. 3.) Continuing to receive no response from Andrews, on June 15, Nationstar noticed a deposition of Andrews to occur on

---

[5] Nationstar avers that, in reliance on Andrews's representations that he agreed to the resolution and would execute the Consent Order, it refrained from pushing the litigation for judicial economy and to reduce costs pending the execution of the Consent Order. (Mot. for Default J. ¶ 12.)

June 30, 2026, at 10:00 a.m., in the offices of Flora Pettit PC in Charlottesville, Virginia. (*Id.* ¶ 14; Ex. 4.) Andrews did not appear, nor did he contact Nationstar's counsel. (*Id.*) To date, despite personal service, communications with Nationstar's counsel and Mangum concerning the lawsuit, and a duly noticed deposition, Andrews has failed to participate in the litigation and has not executed or returned the Consent Order. (*Id.* ¶ 15.)

On July 15, 2026, Nationstar filed the instant motion for default judgment against Andrews. (*See* Mot. for Default J.) In its motion, Nationstar asks the court to enter a judgment declaring that:

> (i) Diane H. Andrews and Charles R. Andrews, Sr., held the property jointly with rights of survivorship under the Married Deed; (ii) Charles R. Andrews Jr. recognized at all relevant times that he did not inherit an interest in the Property; (iii) the Property passed solely to Diane H. Andrews upon the death of Charles R. Andrews, Sr. and is subject to the Refinance Deed of Trust; (iv) the Refinance DOT is secured by the entire Property; [and] (v) Upon the death of Diane H. Andrews, the Property passed to Jennifer Mangum, subject to the Refinance Deed of Trust[.]"

(*Id.* ¶ 23.) Nationstar is not seeking monetary damages against Andrews (*see id.* ¶ 1), nor does it ask the court to resolve its other two claims. Andrews has not filed any responses to the entry of default or motion for default judgment. Accordingly, the motion for default judgment against Andrews is ripe for decision.

### III.   STANDARD OF REVIEW

The Fourth Circuit has "repeatedly expressed a strong preference that . . . claims . . . be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010); *see also United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) ("[T]he clear policy of the Rules is to encourage dispositions of claims on their merits . . . ."). But when

a "properly served defendant . . . fails to plead or otherwise defend against the allegations in [a] complaint," the court is authorized to enter default judgment against that defendant under Federal Rule of Civil Procedure 55(b)(2). *Reynolds Innovations, Inc. v. E-CigaretteDirect, LLC*, 851 F. Supp. 2d 961, 962 (M.D.N.C. 2012). "To obtain a default judgment, a party must first seek an entry of default under Federal Rule of Civil Procedure 55(a)." *Pelyn Tr. v. Fair Exch. Tr.*, No. 3:08-cv-287, 2009 WL 2912521, at *1 (W.D.N.C. Sep. 3, 2009) (internal quotation omitted).

After the clerk enters default and a party moves for a default judgment, the court must determine if the complaint sets forth a legitimate cause of action, accepting the well-pleaded allegations of fact as true. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). When determining liability, the court's inquiry is "whether or not the face of the pleadings supports the default judgment and the causes of action therein." *Fin. Pac. Leasing, Inc. v. Moess Trucking, LLC*, No. 3:20CV00066, 2021 WL 279608, at *1 (W.D. Va. Jan. 27, 2021). The court need not accept the moving party's legal conclusions as true. *Jones v. Williams*, No. WDQ–09–3126, 2010 WL 2813483, at *4 n.4 (D. Md. July 14, 2010) (citing *Louisiana Counseling & Fam. Servs., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 364 (D.N.J. 2008)). At bottom, the award of a default judgment is subject to the district court's discretion; it is not a matter of right. *See, e.g.*, *Leighton v. Homesite Ins. Co. of the Midwest*, 580 F. Supp. 3d 330, 332 (E.D. Va. 2022). The court also has discretion to conduct a hearing to investigate any matter as needed. Fed. R. Civ. P. 55(b)(2).

## IV.    ANALYSIS

Nationstar makes several legal arguments in support of its motion for default judgment and its request that the court enter a declaratory judgment that Andrews holds no interest in

the Property, and to the extent that he did, he has since disclaimed it. As noted above, although the court accepts the *facts* asserted in the complaint as true at this stage, it need not accept Nationstar's legal conclusions. *See Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540–41 (D. Md. 2011) (stating that when reviewing a motion for default judgment, the court must "determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought" (quoting *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001))); *Jones*, 2010 WL 2813483, at *4 n.4. Indeed, Nationstar's legal arguments regarding how the Property passed following Charles Sr.'s death—and who has title to the Property now—are incorrect.

First, Nationstar asserts that Diane and Charles Sr. held the Property jointly with rights of survivorship under the Married Deed. (Mot. for Default J. ¶ 21(a), Compl. ¶ 43(i).) Specifically, Nationstar contends that when Diane and Charles Sr., as an unmarried couple, conveyed the Property to themselves as "husband and wife as joint tenants" (*see* Compl. Ex. B), that conveyance "was sufficient and/or intended to convey the Property with rights of survivorship[.]" (Mot. for Default J. ¶ 3.) Nationstar is incorrect—as a matter of black-letter Virginia law. Notably, Virginia has abolished survivorship between joint tenants and tenants by the entirety[6] unless "it manifestly appears from the tenor of the instrument . . . that it was intended the part of the one dying should then belong to the others." Va. Code Ann. § 55.1-134(B); *see In re Sprouse*, 91 F.3d 133, *1 (4th Cir. 1996) (per curiam). The effect of that provision "is to abolish tenancies by the entirety (and joint tenancies) unless it is 'manifest' from the

---

[6] Survivorship between joint tenants was abolished by statute "enacted as early as 1787," while survivorship between tenants by the entirety was abolished in 1850. *Vasilion v. Vasilion*, 66 S.E.2d 599, 603 (Va. 1951); *see also In re Sampath*, 314 B.R. 73, 88 (Bankr. E.D. Va. 2004) (chronicling the statutory history of survivorship in Virginia).

wording of the conveyance that the grantor intends to establish a tenancy by the entirety."
*Wolfe v. Sprouse*, 183 B.R. 739, 741 (W.D. Va. 1995) (citing *Allen v. Parkey*, 149 S.E. 615, 618
(Va. 1929)). "[T]he Supreme Court of Virginia has defined the term 'manifest' as used in
section [55.1-134(B)] to mean 'obvious to the understanding, evident to the mind, not obscure
or hidden, and . . . synonymous with open, clear, visible, unmistakable, indubitable,
indisputable, evident and self-evident.'" *Id.* (quoting *Hoover v. Smith*, 444 S.E.2d 546, 548 (Va.
1994)).

Though it is not necessary for the deed to actually use the magic words "tenants by the
entirety" to create such an estate and a right of survivorship, the owners must be "described
as husband and wife and take jointly with *right of survivorship*." *In re Potter*, 274 B.R. 224, 229
(Bankr. E.D. Va. 2002) (emphasis added) (citing *In re Zella*, 196 B.R. 752, 756 (Bankr. E.D. Va.
1996) (holding that a deed describing a husband and wife as joint tenants "with the full
common law right of survivorship" created a tenancy by the entirety)); *see also Burroughs v.
Gorman*, 184 S.E. 174, 174 (Va. 1936) (holding that deed to husband and wife as joint tenants
with common-law right of survivorship created a tenancy by the entirety); *In re Manicure*, 29
B.R. 248, 250 (Bankr. E.D. Va. 1996) (holding that a lack of any language suggesting
survivorship, even though the real property was conveyed to husband and wife, did not create
a tenancy by the entirety). In other words, while a deed describing owners as "tenants by the
entirety" is sufficient to demonstrate an intent to create a right of survivorship (even without
the deed indicating that the owners are married), the phrase "husband and wife as joint
tenants"—without any language of survivorship—is *not* enough, even though it references the
owners being married. *Contrast* Va. Code Ann. § 55.1-135 ("When any person causes any real

or personal property . . . to be titled . . . in the name of two or more persons 'jointly,' 'as joint tenants,' in a 'joint tenancy,' or other similar language, such persons shall own the property in a joint tenancy without survivorship"), *with* Va. Code Ann. § 55.1-136(A) ("An intent that the part of the one dying should belong to the other shall be manifest from a designation of the spouses as 'tenants by the entireties' or 'tenants by the entirety.'"); *In re Massey*, 225 B.R. 887, 896 (Bankr. E.D. Va. 1998) (holding that the phrase "tenants by the entirety," standing alone, "manifestly express[es] both the marital relationship and the intent to create a right to survivorship"). Here, the Married Deed conveyed the Property to "Diane H. Andrews and Charles R. Andrews, wife and husband as joint tenants"; there was no mention of a tenancy by the entirety nor common-law right of survivorship. (Compl. Ex. B.) Therefore, the language of the deed does not demonstrate a manifest, obvious intent to create a right of survivorship.

And to the extent that the phrasing may be ambiguous: although general contract principles allow a court to look outside the four corners of the instrument when there is ambiguity, *see NAD LLC v. Rose*, No. 1:16-cv-0158, 2016 WL 7425303, at *5 (E.D. Va. Dec. 23, 2016), the Supreme Court of Virginia has held that, in the section 55.1-134 context, the court is "not obligated to follow directions . . . that are unclear, that are derived from language that is susceptible of more than one meaning." *Hoover*, 444 S.E.2d at 548. Because section 55.1-134(B) requires "that the intention to create a survivorship estate be manifest" and "parties need only use language that passes a simple test" to satisfy that requirement, when the language of a deed "wholly fails that test[,] [it] is insufficient, as a matter of law, to create a survivorship estate." *Id.* Accordingly, the court will not "fill the gap" in the Married Deed by considering extrinsic circumstances (*i.e.*, that Charles Sr. and Diane originally owned the

- 10 -

Property as an unmarried couple before conveying it to themselves as a married couple) in determining whether Charles Sr. manifestly intended his share of the Property to pass to Diane. Doing so would require reliance on inferences when the statute requires manifest intent to appear *from the face of the instrument*. But even if the court deemed it necessary to consider extrinsic circumstances, it has also considered the fact that Charles Sr. and his first wife, June, owned the Property as tenants by the entirety (Compl. ¶ 8), and, therefore, the court might rightly assume that Charles Sr. knew what language needed to be in the deed to create a right of survivorship. In other words, all roads lead to the same conclusion: Diane and Charles Sr. each owned one-half interests in the Property, without a common-law right of survivorship.

Because the Married Deed did not create a right of survivorship—and because Charles Sr. died intestate (Compl. ¶ 16)—title to Charles Sr.'s one-half interest in the Property passed via Virginia's intestacy statute. Because Diane was Charles Sr.'s spouse but not Charles Jr. and Wendy Andrews's parent, two-thirds of Charles Sr.'s interest passed to Charles Jr. and Wendy and one-third passed to Diane. *See* Va. Code Ann. § 64.2-200(A)(1). Charles Jr. and Wendy, therefore, each received a total of one-sixth interest in the Property, while Diane ended up with a two-thirds interest in the Property (her one-half interest plus one-third of Charles Sr.'s one-half interest [or, one-sixth]). When Diane died in 2024, her two-thirds interest passed to her daughter, Jennifer Mangum. (Compl. ¶¶ 35–36.) And when Wendy died in 2025, Charles Jr. (the beneficiary of her estate [see Compl. ¶¶ 37–38]) inherited Wendy's one-sixth interest in the Property. All in all, under the Virginia intestacy statute, Mangum has a two-thirds interest

in the Property, and Charles Jr. has a one-third interest.[7]

Next, Nationstar contends that after the death of Charles Sr., the Andrews children "took no action indicating any ownership or other interest in the Property" and "recognized at all relevant times that they did not inherit an interest in the Property." (Mot. for Default J. ¶¶ 19, 43(iii); *see also* Compl. ¶¶ 19.) In other words, Nationstar appears to argue that the Andrews children forfeited their interests in the Property by not asserting that they inherited that interest (or not taking actions that demonstrated that they partially owned the Property). That premise is untenable for two reasons. First, it has long been recognized in Virginia that when a decedent dies intestate, title to his real estate vests *immediately* in the heir (or heirs), which are determined by the intestacy statute. *See, e.g.*, *Simmons v. Lyle's Adm'r*, 73 Va. 752, 758 (1880) ("Upon the death of the owner intestate, his real estate descends upon his heirs."); *Mort v. Jones*, 51 S.E. 220, 221 (Va. 1905) ("Upon the death of a parent intestate the descent is cast *by operation of law* upon his heirs, and his personalty passes in accordance with the statute of distribution." (emphasis added) (citing *Headrick v. McDowell*, 45 S.E. 804, 805 (Va. 1903))); *Bruce v. Farrar*, 158 S.E. 856, 857 (Va. 1931) ("[W]hen any person having title to any real estate of inheritance dies intestate, such real estate descends and passes, upon the statute of descent, directly to the heir, without the in[t]ervention of a personal representative, subject only to the debts of the ancestor."). It would be contrary to that long-held principle to require an heir to

---

[7] As explained below, however, Charles Jr.'s bankruptcy estate actually retained the interest that Charles Jr. had in the Property in 2015 (one-sixth), when he commenced the bankruptcy proceeding. The court laid out the above for the purposes of demonstrating how Virginia's intestacy statute applies to the inheritance of the Property.

affirmatively claim his inheritance, or else he loses it.

Further, an heir's title to property may be extinguished, but here, Nationstar does not allege, nor is there any evidence, that Diane Andrews took over Charles Jr.'s interest in the house through adverse possession or that any other legal doctrine applies to extinguish Charles Jr.'s interest in the Property in favor of his stepmother. Ultimately, Charles Jr.'s lack of action or acknowledgement of his interest in the Property may help Nationstar succeed in its other claims against him (quiet title [Count II] and equitable lien, implied lien, constructive and/or resulting trust to prevent unjust enrichment [Count III]). But the pertinent question for resolving *this motion* is whether Charles Jr. acquired an interest in the property upon his father's death, not whether he would be able to take ownership of the property in light of the circumstances here (*i.e.* the foreclosure and sale of the Property to a bona fide purchaser [Freddie Mac]).

Nationstar's final argument is that, because Andrews stated on his Schedule A form in his bankruptcy proceeding that he had no real property interests, he essentially acknowledged that he had no interest in the Property, or, alternatively, he forfeited any interest that he had. (Mot. for Default J. ¶ 21(e)–(i); Compl. ¶¶ 20–24.) This argument misrepresents what occurs when a debtor fails to schedule a property interest in his bankruptcy proceeding. At the threshold, when a debtor commences a Chapter 7 bankruptcy proceeding, *all* of his legal and equitable interests in property at the commencement of the case becomes part of the bankruptcy estate. *In re McLaren*, 562 B.R. 309, 316 (Bankr. E.D. Va. 2016) (quoting 11 U.S.C. § 541(a)(1)); *Miller v. Pac. Shore Funding*, 287 B.R. 47, 50 (D. Md. 2002) ("Property of the estate includes all of the debtor's interests . . . [a]nd 'all' . . . means 'all[.]'" (internal citations omitted)).

- 13 -

This means that "[p]roperty of the debtor does not escape the bankruptcy estate merely because the debtor is unaware of its existence." *Id.*; *see also Vinal v. Fed. Nat. Mortg. Ass'n*, 131 F. Supp. 3d 529, 537 (E.D.N.C. 2015) ("Even claims that are unknown to the debtor when the debtor files for bankruptcy become property of the bankruptcy estate."). Accordingly, Andrews's one-sixth interest in the Property that he had in 2015 (he did not inherit his sister's interest until 2025) became a part of the bankruptcy estate whether he knew about it and reported it on his forms or not.

When a debtor does not schedule an interest in property and it is therefore not administered by the bankruptcy trustee, "it remains property of the estate even after the case has been closed." *In re Pullman*, 319 B.R. 443, 445 (Bankr. E.D. Va. 2004); *see also Shin v. Lee*, 550 F. Supp. 3d 313, 320 (E.D. Va. 2021) ("[P]roperty that is unscheduled by a debtor is not abandoned back to the debtor after a bankruptcy case has been closed because the debtor's actions have prevented the trustee from having knowledge, or sufficient means of knowledge, of its existence."). Accordingly, because Andrews did not schedule his, at the time, one-sixth interest in the Property, it remains a part of his bankruptcy estate. *See In re McLaren*, 562 B.R. at 318 n.10 ("Property of the estate is determined by 11 U.S.C. § 541 and is not affected by the debtor scheduling or failing to schedule the asset. Property that the debtor fails to schedule is property of the estate and remains property of the estate after the case is closed unless it is abandoned or administered."). Nationstar is therefore incorrect that Andrews's failure to schedule that interest meant that his interest in the Property passed to Diane Andrews. Currently, then, Andrews retains a one-sixth interest in the Property, his bankruptcy estate

retains a one-sixth interest,[8] and Mangum has the two-thirds interest she inherited from her mother.

As a result, Nationstar has not established that (1) the entire Property passed to Diane upon Charles Sr.'s death and (2) that Charles Jr. forfeited his interest in the Property. Because the court cannot give Nationstar the remedy it requested in its motion, Nationstar is not entitled to a default judgment.

## V.    CONCLUSION

For the foregoing reasons, Nationstar's motion for default judgment will be denied.

The Clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this 11th day of August, 2026.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[8] Because Charles Jr.'s bankruptcy estate retains a one-sixth interest in the Property, its trustee must be added to the suit, via an amended complaint, and named in the claims concerning title and potential liens against the Property. *See In re Riffin*, No. 10-11248, 2010 WL 3260131, at *4 (Bankr. D. Md. Aug. 18, 2010) ("As the only lawful party to act for property of the bankruptcy estate, it appears clear that the Trustee becomes a necessary party to actions affecting the property of the estate."); *Int'l Fid. Ins. Co. v. Kerley*, No. 94-0071-C, 1995 WL 245613, at *4 (W.D. Va. Apr. 12, 1995).